**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDLE DIVISION**

SHAMEKIA HAMPTON,

                Plaintiff,

v.

EQUIFAX INFORMATION
SERVICES, LLC,

                Defendant.

Case No.: 0:22-cv-60353

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Shamekia Hampton ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.*, against Defendant Equifax Information Services, LLC ("Defendant").

### I.      INTRODUCTION.

1.     Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.* by the Defendant. Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. §1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.   <u>JURISDICTION AND VENUE.</u>

2.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. §1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.     Venue in the Southern District of Florida is proper pursuant to 28 U.S.C. §1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.   <u>PARTIES.</u>

4.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5.     Plaintiff is a natural person who resides in Sunrise, Florida.

6.     Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

7.     Defendant is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its agent for service of process, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

8.     During all times pertinent to this Complaint, Defendant was authorized to

*Hampton, Shamekia v.*
*Equifax Information Services, LLC*
Complaint

conduct business in the State of Florida and conducted business in the State of Florida on a routine and systematic basis.

9.      Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. §1681a(f) of the FCRA.

10.     During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11.     Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## IV.    FACTUAL BACKGROUND.

12.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14.     Congress enacted the FCRA to ensure fair and accurate reporting, promote

*Hampton, Shamekia v.*
*Equifax Information Services, LLC*
Complaint

efficiency in the banking system, and protect consumer privacy.

15.     The FCRA is intended to ensure consumer reporting agencies ("CRAs") exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16.     Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA"), in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

17.     Defendant regularly obtains consumer bankruptcy information to include in consumer reports.

18.     The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

19.     Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as

*Hampton, Shamekia v.*
*Equifax Information Services, LLC*
Complaint

applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

20.     Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant by furnishers, and other information is independently gathered by Defendant from third party providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

21.     Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information, with the intention of including it in the consumer reports Defendant sells to third parties for a profit.

22.     Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by §1681e(b).

23.     Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

24.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's reports.

25.     The information Defendant includes in consumer reports contributes to a consumer's overall creditworthiness and determines their FICO Score(s).

*Hampton, Shamekia v.*
*Equifax Information Services, LLC*
Complaint

26.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of their creditworthiness.

27.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

a.     "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

28.     A consumer who has obtained a bankruptcy discharge and has a consumer report that is inaccurately reporting that an account wa discharged in bankruptcy when the account was instead fact paid off with no remaining balance at the time of the bankruptcy filing suffers greater harm than if that account was accurately reporting.

29.     Defendant also receives information about account information directly from furnishers of account/tradeline information.

30.     However, Defendant regularly reports inaccurate information about consumers after they receive a Discharge Order.

31.     Rather than follow reasonable procedures to assure maximum possible

*Hampton, Shamekia v.*
*Equifax Information Services, LLC*
Complaint

accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

32.   Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to Defendant, already included in Defendant's credit files, contained in public records that Defendant regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

33.   Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

34.   Defendant routinely reports inaccurate, and materially misleading information about consumers like Plaintiff, without verifying or updating the information as required by §1681(e)(b), despite possessing information inconsistent with the reported information that establishes the reported information is inaccurate.

35.   Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

36.   Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by §1681(e)(b).

37.   Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in Defendant's own files.

38.   Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate credit

*Hampton, Shamekia v.*
*Equifax Information Services, LLC*
Complaint

reporting following a Chapter 7 discharge.

39.     Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which cause Defendant to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

40.     Plaintiff had an account with Capital One Bank , ending in 9931 and opened in July 2019 ("Capital One Account"), which predated Plaintiff's bankruptcy filing.

41.     Plaintiff also had three accounts with First Premier Bank, one ending in 4872 and opened in November 2015, one ending in 6297 and opened in January 2017, and another ending in 0151 and opened in October 2020 ("First Premier Accounts") (the Capital One Account and the First Premier Accounts, together the "Accounts").
The Accounts predated Plaintiff's bankruptcy filing.

42.     Plaintiff paid off the balances on the Accounts prior to the filing of her bankruptcy petition.

43.     Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about March 24, 2021, in the United States Bankruptcy Court for the Southern District of Florida (Case No. 21-12755).

44.     Plaintiff received an Order of Discharge on or about June 29, 2021.

45.     Upon information and belief, Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

46.     Defendant obtained notice of Plaintiff's bankruptcy and discharge through

its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff's consumer reports.

47.     In Plaintiff's consumer reports, Defendant included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged in the Public Records section of Plaintiff's consumer report.

48.     Defendant also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

49.     Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

50.     Defendant should have **only** reported Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy.

51.     Defendant should **not** have inaccurately reported accounts which had a $0 balance at the time Plaintiff's bankruptcy was filed as included in the bankruptcy, but did so.

52.     Instead, Defendant inaccurately reported the Accounts as included in bankruptcy.

53.     The Accounts were paid prior to Plaintiff's bankruptcy.

*Hampton, Shamekia v.*
*Equifax Information Services, LLC*
Complaint

54.     Defendant inaccurately reported the Accounts as included in bankruptcy.

55.     However, the Accounts should have been reported as "paid".

56.     Defendant did not indicate that the Accounts were paid off prior to the bankruptcy, despite correctly reporting Plaintiff's bankruptcy in the public records section of Plaintiff's consumer report.

57.     Defendant does not have reasonable procedures in place to detect pre Chapter 7 debts which predate the filing of a bankruptcy but had been paid off prior to such filing.

58.     Notably, the other national consumer reporting agencies Trans Union and Experian did not inaccurately report the Accounts like Defendant.

59.     When an account has no balance, there is nothing to discharge.  The Accounts therefore were not included in Plaintiff's bankruptcy and was not discharged.

60.     Upon information and belief, Capital One and First Premier Bank furnished information to Defendant that indicated Plaintiff's Accounts had been paid after being charged off, but Defendant rejected or otherwise overrode the data it received.

61.     Alternatively, upon information and belief, Defendant knew from past experiences that  Capital One and First Premier Bank furnished inaccurate information regarding paid off and discharged debts or, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy.

62.     Nevertheless, Defendant blindly relied on the information provided by Capital One and First Premier Bank even though this information conflicted with or was contradicted by information contained in Defendant's records, as well as Defendant's knowledge regarding Plaintiff's bankruptcy and discharge.

*Hampton, Shamekia v.*
*Equifax Information Services, LLC*
Complaint

63.     Defendant's reliance on the furnishers,  Capital One and First Premier Bank, was therefore unreasonable.

64.     Defendant inaccurately reported that Plaintiff's debts were discharged in bankruptcy, and reported inaccurate account statuses and/or payment histories.

65.     Defendant inaccurately reported the Accounts as discharged in Chapter 7 Bankruptcy when in fact the Accounts were paid off after being charged off.

66.     Defendant failed to indicate that the Accounts were paid prior to the bankruptcy, and instead inaccurately reported this as included/discharged in Chapter 7 Bankruptcy,

67.     Defendant's reporting of the Accounts is patently false/incorrect and therefore inaccurate.

68.     If not patently false/incorrect, Defendant's reporting of the Accounts is materially misleading and therefore inaccurate.

### *Plaintiff's Damages*

69.     Upon information and belief, had Defendant accurately reported the Accounts with the correct payment status, instead of as included in bankruptcy, Plaintiff's credit scores and creditworthiness would have been better.

70.     Upon information and belief, after Plaintiff's bankruptcy discharge, Plaintiff applied for credit with Capital One and was approved with less favorable rates and a lower credit limit due to Defendant's inaccurate reporting.

71.     Defendant's inaccurate reporting of the Accounts, along with additional information belonging to Plaintiff, was published to Capital One by Defendant during the

*Hampton, Shamekia v.*
*Equifax Information Services, LLC*
Complaint

process of Plaintiff's credit applications.

72.     As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

73.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational harm, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## V.     COUNT I

### Violation of the Fair Credit Reporting Act, 15 U.S.C. §1681e(b)

74.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

75.     The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. §1681e(b).

76.     Defendant negligently and/or willfully violated 15 U.S.C. §1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information pertaining to pre-bankruptcy debts after a consumer Plaintiff received a Discharge Order.

77.     Defendant independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported the same in Plaintiff's consumer reports.

78.     When Defendant procured and published Plaintiff's bankruptcy information,

*Hampton, Shamekia v.*
*Equifax Information Services, LLC*
Complaint

it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy. Defendant knew or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts, not previously paid off debts.

79.     Defendant knew or should have known that an account that has a $0 balance when a Chapter 7 bankruptcy petition is filed is not included in the bankruptcy.

80.     These obligations are well established by the plain language of the FCRA, in promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Defendant from which Defendant is on notice of its unreasonable procedures concerning the reporting of consumer information after a bankruptcy.

81.     Additionally, Defendant possesses or can easily obtain substantial written materials that detail CRA's duties and obligations under the FCRA, including those that apply when consumers file for Chapter 7 Bankruptcy.

82.     Despite knowledge of these legal obligations, Defendant willfully and consciously breached its known duties and deprived Plaintiff of Plaintiff's rights under the FCRA.

83.     In this case, Defendant inaccurately reported accounts that Defendant knew were paid prior to Plaintiff's Chapter 7 Bankruptcy, and not included or discharged by Plaintiff's bankruptcy discharge.

84.     Defendant had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including Plaintiff's bankruptcy case number, court, date of filing and date of discharge.

*Hampton, Shamekia v.*
*Equifax Information Services, LLC*
Complaint

85.     Defendant received notice of Plaintiff's bankruptcy discharge through public records, its own files, and information provided by data furnishers.

86.     Defendant knows that non discharged debts should not be reported as included in bankruptcy.

87.     Yet in this case, Defendant reported the Accounts, which were paid off prior to Plaintiff's bankruptcy, as "included in bankruptcy".

88.     Defendant violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/consumer report, and by also failing to report accurate information when Defendant knew or should have known the information Defendant is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

89.     Defendant also violated 15 U.S.C. §1681e(b) by failing to report accurate information when Defendant knew or should have known the information it was reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and reasonably available to Defendant.

90.     Defendant's violations of 15 U.S.C. §1681e(b) were willful.

91.     Alternatively, Defendant's violations of 15 U.S.C. §1681e(b) were negligent.

92.     Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

93.     Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant inaccurately the Accounts, which were paid in full, as having been discharged in

*Hampton, Shamekia v.*
*Equifax Information Services, LLC*
Complaint

bankruptcy.

94.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, loss of sleepshock, embarrassment, and anxiety.

95.    Defendant is a direct and proximate cause of Plaintiff's damages.

96.    Defendant is a substantial factor in Plaintiff's damages.

97.    Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. §1681 *et seq*.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant for the following:

(a)    Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. §1681e(b);

(b)    An award of actual damages pursuant to 15 U.S.C. §§1681n(a)(1) or 1681o(a)(1);

(c)    An award of statutory damages pursuant to 15 U.S.C. §§1681n(a)(1) and 1681o(a)(1);

(d)    An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. §1681n(a)(2),

(e)    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and §1681o(a)(2); and

*Hampton, Shamekia v.*
*Equifax Information Services, LLC*
Complaint

(f)    Such other and further relief as this Honorable Court may deem just and

proper, including any applicable pre-judgment and post-judgment interest,

and/or declaratory relief.

## VII.   JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Date: February 16, 2022                **Santiago J Teran**
                                       Santiago J Teran (FL Bar No. 1018985)
                                       E-mail: santiago@pricelawgroup.com
                                       Price Law Group, APC
                                       2125 Biscayne Blvd., Ste 206
                                       Miami, FL 33137
                                       Direct: (347) 946-7990
                                       Telephone: (818) 600-5586
                                       Facsimile: (818) 600-5486
                                       *Attorneys for Plaintiff*
                                       *Shamekia Hampton*

*Hampton, Shamekia v.*
*Equifax Information Services, LLC*
Complaint